# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| LETONIO C. SWADER | ) | |
| Petitioner, | ) | |
| | ) | **Civil Action No. 3:10-cv-00465** |
| v. | ) | **Judge Richardson/Frensley** |
| | ) | |
| VINCE VANTELL, WARDEN, | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

In 2004, a jury convicted Petitioner Letonio C. Swader of first-degree felony murder, second-degree murder, attempted especially aggravated robbery, and possession of a deadly weapon during the commission of an offense. *State v. Swader*, No. M2005-00185-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 109, at *1 (Crim. App. Feb. 6, 2006); Docket No. 1, p. 1.

Petitioner's murder convictions were merged, and he was sentenced to life. *Id.* The Petitioner was also sentenced to 10 years for the attempted especially aggravated robbery conviction and two years for the possession of a weapon convictions. *Id.* On February 6, 2006, the Tennessee Court of Criminal Appeals affirmed Petitioner's conviction. *Id.* Thereafter, the Petitioner filed for post-conviction relief raising claims of insufficient evidence to support his conviction, ineffective assistance of counsel, and double jeopardy. *Swader v. State*, No. M2008-01021-CCA-R3-PC, 2009 Tenn. Crim. App. LEXIS 854 (Crim. App. Oct. 7, 2009). The state court rejected Petitioner's arguments. *Id.* at *11. Subsequently, the Tennessee Supreme Court declined Petitioner's permission to appeal on three occasions. *State v. Swader*, No. M2005-00185-SC-R11-CD, 2006 Tenn. LEXIS 576 (June 26, 2006); *Swader v. State*, No. M2008-01021-SC-R11-PC, 2010 Tenn. LEXIS 245 (Mar. 15, 2010); *Swader v. State*, No. M2013-01585-SC-R11-PC, 2014 Tenn. LEXIS 170 (Feb. 24, 2014).

Having exhausted his attempts to seek relief in state courts, Petitioner now brings this action to seek habeas corpus relief action under 28 U.S.C. § 2254. Docket No. 51, p. 2; Docket No. 51, p. 12. Petitioner requests that this Court find: (1) ineffective assistance of counsel; (2) the State's withholding of material evidence constituted a violation of *Brady v. Maryland*; (3) the State knowingly proffered false testimony; (4) the Petitioner's confession was involuntary and should have been suppressed; and (5) that the Petitioner's sentence of life imprisonment constituted cruel and unusual punishment. Docket No. 51, p. 6-11.

For the reasons set forth below, the Undersigned recommends that Petitioner's amended petition for habeas relief by **DENIED** and **DISMISSED WITH PREJUDICE.**

## I.      BACKGROUND

In deciding Petitioner's direct appeal from his conviction, the Tennessee Court of Criminal Appeals summarized the factual background of this case:

> On February 2, 2003, the victim, Kristen Holzapfel, was shot in the back while standing outside an apartment complex in Murfreesboro. A petition was filed in the Rutherford County Juvenile Court, charging the appellant with first degree felony murder, attempted especially aggravated robbery, and possession of a firearm during the commission of an offense. The appellant was transferred to criminal court to be tried as an adult. The Rutherford County Grand Jury then charged the appellant with first degree premeditated murder, first degree felony murder, attempted especially aggravated robbery, and possession of a firearm during the commission of an offense.

> Wayne Lawson, the victim's boyfriend, testified at trial that he was a detective with the Murfreesboro Police Department and was divorced with two young children. In February 2003, Lawson lived in the Gateway apartment complex, apartment number A-9. He stated that on Sunday, February 2, 2003, he and the victim spent the day with his children. That evening, the victim and Lawson's daughter made jewelry from a craft kit, and Lawson prepared dinner. They finished eating about 5:30 p.m., and Lawson began bathing his children while the victim cleaned up in the living room. At some point, the victim went into the bathroom and asked Lawson for his car keys so that she could get a vacuum cleaner out of his car. Lawson gave the victim the keys, and the victim went outside.

> Lawson testified that after he finished bathing his children, his daughter told

2

him that she could not find the victim and that a police officer was outside. Lawson looked out a window and saw the officer standing over the victim, who was lying on the ground next to Lawson's car. Lawson went outside, and Officer April Samol told Lawson that she believed the victim had been shot. Lawson saw a small hole in the victim's back and a large amount of blood around her head. Lawson turned the victim over and saw that her eyes were open and that her pupils were fixed. The victim was unresponsive, had no pulse, and was not breathing. Lawson stated that he never heard a gunshot.

Isaac Putnam testified that in February 2003, he lived in the Gateway apartment complex, apartment number A-13. On the evening of February 2, he and his wife heard a gunshot. Putnam walked onto his patio and saw the victim lying on the sidewalk. He also saw blood underneath the victim's body and ran back inside to telephone 911. By the time he got off the telephone, Officer Samol had arrived. On cross-examination, Putnam stated that after he heard the gunshot and went outside, he did not see anyone other than the victim.

Officer April Samol of the Murfreesboro Police Department testified that on February 2, 2003, she was dispatched to the Gateway apartment complex in response to a possible shooting. When she arrived, Isaac Putnam flagged her down and told her that a woman was lying in the parking lot. Officer Samol saw the victim lying face-down in a fetal position. Wayne Lawson came out of his apartment and asked what was going on, and Officer Samol got out of her patrol car and told him that she thought the victim had been shot. Lawson began screaming and crying. The victim did not have a pulse and was not breathing. Lawson lifted the victim's shirt, and Officer Samol saw a gunshot wound in the victim's back. When other officers arrived, they found a nine millimeter shell casing in the parking lot. They also found a set of keys, a vacuum cleaner, and a vacuum cleaner bag.

Jennifer Lynn Blackwell testified that on February 2, 2003, she lived in the G building of the Gateway apartment complex. That evening, Blackwell was talking on her cellular telephone when an African-American male in his teens or early twenties walked up to her glass door. He asked Blackwell for a cigarette, and she gave him one. The male was standing about one and one-half feet away from Blackwell, and she saw him for about thirty seconds. She stated that she was ninety to ninety-five percent certain that the male was the appellant.

Special Agent Jason Wilkerson of the Tennessee Bureau of Investigation (TBI) testified that he investigated the case. A nine-millimeter shell casing was recovered from the crime scene and was found about twenty feet from the sidewalk. Agent Wilkerson also attended the victim's autopsy and received vials of the victim's blood and urine and her clothes. At some point, the appellant became a suspect. On the night of February 7, 2003, Agent Wilkerson and Detective Major Jim Gage were sitting in Gage's unmarked police vehicle and were conducting surveillance on the appellant's home. The appellant came out of his house, walked over to the vehicle, and began talking with the officers. The appellant told the

officers his name, and the officers told the appellant that they needed to speak with him about a crime that had taken place. The appellant got in the front passenger seat of the vehicle, Agent Wilkerson got in the back seat, and Detective Gage drove them to the police department. Agent Wilkerson testified that the appellant was not under arrest at that time.

Agent Wilkerson testified that when they arrived at the police department, he read the appellant Miranda warnings and had the appellant sign a waiver of rights form. The appellant gave a statement, and Agent Wilkerson wrote out the statement. After the interview, the appellant read, made corrections to, and signed the written statement, which was read to the jury. According to the written statement, the appellant borrowed a nine-millimeter gun from Eric Sargent. On the day of the shooting, he was at an apartment complex in Murfreesboro and was near the G building. He walked toward the A building and saw a woman outside. The appellant walked up to the woman and pointed the gun at her. The woman, who was near the sidewalk, turned to run, and the appellant, who was standing in the parking lot, turned away from her. As the appellant turned, the gun "went off." The appellant did not know if the woman had been shot and ran away. According to the written statement, the appellant pointed the gun at the woman in order to get money from her and had "thought about robbing someone before [he] went over there and did it."

Agent Wilkerson testified that during the interview, he asked the appellant how the appellant got to the apartment complex and the appellant would not tell him. He stated that the appellant also would not say where the appellant went after the shooting. The appellant told Agent Wilkerson that after the shooting, he gave the gun back to its owner but would not tell him who owned the gun. Agent Wilkerson later learned that the gun belonged to Jimmy Douglas' uncle. Agent Wilkerson said that the appellant told him the appellant was about seven feet away from the victim at the time of the shooting. Agent Wilkerson testified that the appellant's interview was videotaped, and the tape was played for the jury.

Detective Major James E. Gage of the Murfreesboro Police Department testified that because Wayne Lawson was a detective with the police department, the TBI handled the investigation. From Jennifer Blackwell's description, the police developed a composite sketch of a suspect. Blackwell had described the suspect as an African-American male; about five feet, nine inches tall; in his early twenties; and wearing a bulky, quilted jacket. Detective Gage stated that when he and Agent Wilkerson drove the appellant to the police department, the appellant was wearing a heavy, down-filled jacket. At the police department, the appellant told Detective Gage that he had talked with a woman at the apartment complex before the shooting. Detective Gage testified that according to Jennifer Blackwell, the male she saw on the night of the shooting had asked her for a cigarette between 6:00 and 6:05 p.m. Detective Gage stated that the 911 call reporting the shooting was received at the police department between 6:12 and 6:16 p.m.

Dr. Amy R. McMaster testified that she performed the victim's autopsy. The victim had a gunshot wound to the middle of her upper back and died from the gunshot. The bullet traveled straight, and Dr. McMaster concluded that the gun was not fired at an angle. The bullet severed the victim's spinal cord, and the victim would have been paralyzed and unable to walk. The bullet also severed the victim's aorta, and the victim would have bled to death quickly. After receiving the gunshot, the victim could have lived for a few minutes, but she would have been unable to speak. Dr. McMaster found no soot on the victim's skin or clothing, indicating that the wound was a "distant gunshot wound." On cross-examination, Dr. McMaster testified that if the gun had been seven feet away from the victim when fired, the resulting wound would have been classified as a distant gunshot wound.

Special Agent Don Carman of the TBI testified that he was a forensic scientist in the firearms identification unit. He received a nine millimeter pistol from Agent Wilkerson, a shell casing recovered from the crime scene, and a bullet recovered from the victim's body. Agent Carman test-fired bullets from the pistol and compared them to the bullet recovered from the victim. He concluded that the bullet recovered from the victim was fired from the gun. He also examined the spent shell casing recovered from the crime scene and concluded that it had been fired from the gun. Agent Carman stated that in order for the gun to have been fired, seven and three-quarter pounds of pressure had to be applied to the trigger. He examined the victim's clothing and found no gunpowder residue. On cross-examination, Agent Carman testified that if the gun had been fired from more than three or four feet away, the gun would not have left gunpowder residue on the victim.

The appellant, who was seventeen years old at the time of trial, testified that he had been sixteen at the time of the shooting and a full-time high school student. On the afternoon of February 2, 2003, he was at his cousin Robert Gooch's house and stayed there for two to five hours. At some point, the appellant telephoned Shurrell Hyde, a former girlfriend. He went to Hyde's house about 5:30 p.m. and stayed there for about thirty minutes. The appellant then went outside, smoked a marijuana cigarette, and started walking. He said that he walked to the Gateway apartment complex, saw a woman outside, and asked her for a cigarette. The woman gave him the cigarette, and the appellant continued walking. The appellant saw the victim and walked past her. He turned around, and the two of them looked at each other briefly. The appellant said that the victim turned to run, that he turned to run, that the gun fired, and that "everything went black."

The appellant testified that he ran back to Robert Gooch's house and that Gooch drove him home. He left the gun at Gooch's house and learned the next morning that the victim had been killed. A few days after the shooting, the appellant noticed Agent Wilkerson and Detective Gage outside, near a church. He walked up to them and told them his name. The officers drove the appellant to the police department, and the appellant told them about the shooting. He stated that he did not remember telling Agent Wilkerson that he had gone to the apartment complex

intending to rob someone and that he did not go to the Gateway apartment complex intending to commit a robbery. He acknowledged signing the written statement but said that he did so because he wanted to see his mother and "get it over with." When asked if he could give a reason for his pointing the gun at the victim, the appellant stated that he could not.

On cross-examination, the appellant testified that he could read and write. He stated that he borrowed the gun from Eric Sargent, a schoolmate, on the Tuesday or Wednesday before the shooting and that he was carrying the gun for protection. The appellant said that he carried the gun in his waistband or his pocket and that he showed the weapon to several friends. He said that Sargent told him the gun was loaded but that he never checked the gun. On the evening of February 2, the appellant visited Shurrell Hyde, went outside and smoked marijuana, and started walking. He walked to the Gateway apartment complex, looking for someone who could give him a cigarette. He saw Jennifer Blackwell talking on her cellular telephone, and she gave him one. After receiving the cigarette, he continued walking but did not know where he was going. The appellant saw the victim and walked past her. He turned around and made eye contact with the victim. He pulled out his gun, the victim turned to run, the appellant turned to run, and the gun fired.

The appellant acknowledged that before the shooting, the victim had not been a threat to him. He stated that he did not know why he turned around to look at the victim and that he ran away after the shooting because he was scared. He denied "plotting" to rob someone and said that if he had known the victim had been shot, he would have tried to get help for her. The appellant said that he ran back to Robert Gooch's house and left the gun beside a tree but that he was not trying to hide the gun. He said that he learned the next morning that the victim had been killed, that he went to school, and that he was planning to turn himself in to the police. He denied shooting the victim because she could identify him and said that he "truly and deeply" did not know why he shot her.

Although the appellant was charged with first degree premeditated murder, the jury convicted him of the lesser included offense of second degree murder, a Class A felony. The jury also convicted him of first degree felony murder; attempted especially aggravated robbery, a Class B felony; and possession of a deadly weapon during the commission of an offense, a Class E felony. The trial court merged the murder convictions and sentenced the appellant to life. The trial court also sentenced the appellant as a Range I, standard offender to ten years for the attempted especially aggravated robbery conviction and two years for the possession of a weapon conviction. The trial court ordered the appellant to serve the life and ten-year sentences concurrently and ordered that the two-year sentence be served consecutively to the other two.

*Swader*, 2006 Tenn. Crim. App. LEXIS 109, at *2.

Thereafter, in considering Petitioner's post-conviction petition, trial counsel testified at

6

the post-conviction hearing as follows:

> At the post-conviction hearing, the petitioner's trial counsel testified that he had eighteen years of experience. He testified that he did not represent the petitioner in juvenile court. He said that he was appointed to represent the petitioner and that he visited him in jail at least two times. Counsel reviewed discovery with the petitioner and met with him on other occasions surrounding court appearances. Counsel did not file any written motions in this matter. He testified that this was a strategic decision because the district attorney general agreed not to file a notice of enhancement if counsel would not seek a continuance to file written motions. On cross-examination, he explained that the State had provided him with witness statements and the tapes it intended to introduce. The State agreed to redact portions of the tapes that counsel thought were objectionable and agreed to allow him to make a motion to suppress the petitioner's statement orally.

> Counsel said that he did not ask for a new mental evaluation to be done by the trial court because the petitioner had been found competent by the juvenile court. He did not have any reason to believe that the petitioner was incompetent. He said that he did not seek expert testimony because it was their position that the shooting was an accident.

> The petitioner testified that the only time trial counsel came to visit him in jail was in the day before trial and that counsel spoke to him for only fifteen to twenty minutes. The petitioner testified that he did not recall authorizing counsel to make a plea agreement. He said that, if he had it to do over again, he would not have agreed to transfer to Circuit court. The petitioner acknowledged that he spoke with counsel at the courthouse for a few minutes at a time prior to court proceedings.

> The petitioner testified that he did not feel informed about his case while it was pending. He said that counsel advised him to testify so he could explain what really happened but that counsel never told him he could decline to testify. He testified that counsel did not prepare him to testify.

> During cross-examination, the petitioner acknowledged that an attorney other than his trial counsel entered the transfer agreement to Circuit court. He said that he only remembered one time that trial counsel visited him in jail. He relied on trial counsel to file any necessary motions and was unaware of any motions that should have been filed. The petitioner agreed that he pulled the trigger that killed the victim but that it was not done intentionally. He also agreed that his testimony was the only way he could show the trial court that he did not intend to shoot or rob the victim.

*Swader*, 2009 Tenn. Crim. App. LEXIS 854, at *3-4.

## II.     PROCEDURAL HISTORY

After a jury trial in 2004, Petitioner was convicted of one count each of first-degree felony murder, second-degree murder, attempted especially aggravated robbery, and possession of a deadly weapon during the commission of an offense. Docket No. 1, p. 1. Petitioner's murder convictions were merged, and he was sentenced to life. *Swader*, 2006 Tenn. Crim. App. LEXIS 109, at *1. The Petitioner was also sentenced to 10 years for the attempted especially aggravated robbery conviction and two years for the possession of a weapon convictions. *Id.* Petitioner directly appealed his convictions, raising the following issues: (1) the State committed reversible error by informing potential jurors during *voir dire* that the punishment for first-degree murder in this case was life with the possibility of parole; (2) the trial court erred in failing to suppress his statement to the police; and (3) the evidence was insufficient to support his convictions. *Id*. The Tennessee Court of Criminal Appeals affirmed the judgments of the trial court on February 6, 2006. *Id*. at *32. The Petitioner then applied for leave to appeal to the Tennessee Supreme Court. *Swader*, 2006 Tenn. LEXIS 576. The Tennessee Supreme Court declined permission to appeal on June 26, 2006. *Id.*

Subsequently, Petitioner filed a *pro se* petition for post-conviction relief on May 21, 2004. Docket No. 51, p. 3. After the appointment of counsel, the Petitioner filed an amended petition for post-conviction relief. Docket No. 51, p. 3. On May 12, 2008, the trial court denied the Petitioner post-conviction relief. Docket No. 51, p. 3. On October 7, 2009, the Tennessee Court of Criminal Appeals affirmed the trail court's denial of post-conviction relief, finding a claim of sufficiency of the evidence was not cognizable for post-conviction relief, counsel rendered constitutionally effective assistance, and that the Petitioner waived the issue of double jeopardy. *Swader*, 2009 Tenn. Crim. App. LEXIS 854, at *11. Petitioner then appealed to the Tennessee Supreme Court,

but his appeals were denied on March 15, 2010, and February 24, 2014. *Swader*, 2010 Tenn. LEXIS 245; *Swader*, 2014 Tenn. LEXIS 170.

On May 13, 2013, Petitioner filed his "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody." Docket No. 1, p. 1. Petitioner was appointed counsel and supplemented his pro se petition with an amended petition on November 12, 2010. Docket No. 28, p. 5. Now pending before this Court is Petitioner's second amended petition filed on May 29, 2013. Docket No. 51, p. 1. Petitioner raises the five following claims: (1) he had constitutionally ineffective assistance of counsel; (2) the State's withholding of material evidence constituted a violation of *Brady v. Maryland*; (3) the State knowingly proffered false testimony; (4) the Petitioner's confession was involuntary and should have been suppressed; and (5) that the Petitioner's sentence of life imprisonment constituted cruel and unusual punishment. Docket No. 51, p. 6-11. Respondent filed an answer on July 1, 2013. Docket No. 58, p. 1.

On July 10, 2013, Petitioner moved to stay the instant habeas proceedings to exhaust his state remedies before seeking federal habeas review. Docket No. 64. Specifically, he sought to file a motion in state court to reopen his post-conviction proceedings and present his fifth claim under *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Docket No. 64. The motion was granted, and the instant proceeding was administratively closed. Docket No. 67. After filing his motion in the Circuit Court for Rutherford County, the trial court denied his motion on the grounds that *Miller* was inapplicable to the Petitioner's original sentence of life with the possibility of parole. Docket No. 81-1, p. 32. Petitioner then filed an application for permission to appeal the trial court's denial of his motion but was denied on the same grounds by the Tennessee Court of Criminal Appeals on September 24, 2013. Docket No. 81-3, p. 1. Petitioner filed an application for permission to appeal with the Tennessee Supreme Court which was ultimately

denied on February 24, 2014. Docket No. 81-6; *Swader*, 2014 Tenn. LEXIS 170.

On August 17, 2023, Petitioner filed a supplemental brief in support of the amended petition for a writ of habeas corpus. Docket No. 141. Respondent filed a supplemental brief in opposition on September 18, 2023. Docket No. 142. Petitioner filed a reply in response to the Respondent's supplemental brief on October 5, 2023. Docket No. 145.

### III.    STANDARD OF REVIEW

A state prisoner can only petition a federal court for relief of a state court conviction by applying for a writ of habeas corpus "on the ground that he is in custody in violation of the" United States' Constitution, laws, or treaties. 28 U.S.C. § 2254(a).

### A.    Exhaustion Requirement and Procedural Default

For a petition for a writ of habeas corpus to be granted, "the applicant [must have] exhausted the remedies available in the courts of the State;" "there is an absence of available State corrective process;" or "circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254(b)(A)(A)-(B). The exhaustion requirement ensures state courts have "an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To meet that requirement, the state prisoner seeking relief must raise the claims in the available state courts,[1] *Rose v. Lundy*, 455 U.S. 509, 520 (1982), and his claims must "be presented to [those] courts 'under the same theory in which it is later presented in federal court.'" *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (citing *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987)). Though, "when [a] prisoner fails to fully and fairly present his claims to the state

---

[1] For claims arising from state criminal proceedings in Tennessee, the exhaustion requirement is met when the Tennessee Court of Criminal Appeals has reviewed the asserted claims of error on the merits. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003).

courts before the time for him to do so has expired, he procedurally defaults and is foreclosed from federal habeas review of those claims, absent a showing of cause and prejudice or a fundamental miscarriage of justice." *In re Cook*, 215 F.3d 606, 608 (6th Cir. 2000) (citing *O'Sullivan*, 526 U.S. 838 (1999); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977)).

## B.     Excusing Procedural Default

There must be a "fundamental miscarriage of justice" in order to excuse the procedural default of a claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Supreme Court has held that attorney error cannot serve as the basis for excusing procedural default, so long as counsel met the constitutionally required minimum performance. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In *Carrier*, the Court noted that there must be "some objective factor external to the defense impeded counsel's efforts" to follow the proper state procedures. *Id*. The Court was careful not to provide an exhaustive list of such factors, but did provide two examples: (1) the factual or legal basis for a claim was not reasonably available to counsel, and (2) interference by officials made compliance impracticable. *Id*. The Sixth Circuit has also noted that a petitioner presenting new evidence of their "actual innocence" would excuse a claim being procedurally defaulted. *Hodges v. Colson*, 727 F. 3d 517, 530 (6th Cir. 2013). Overall, a petitioner must overcome a considerable obstacle to have their procedurally defaulted claim considered on its merits—show cause for failure to raise the issue on appeal with the prejudice inflicted on the petitioner. *See Coleman*, 501 U.S. at 750; *Moss v. Miniard*, 62 F.4th 1002, 1011 (6th Cir. 2023).

## C.     Standard of Review for Fully Exhausted Claims

Habeas corpus relief shall only be granted to a state prisoner seeking an application for a writ on fully exhausted claims in two circumstances. *See* 28 U.S.C. § 2254 (d)(1)-(2). The first

11

circumstance is when "the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1). "A state court's adjudication of a claim is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.'" *Stojetz v. Ishee*, 892 F.3d 175, 192 (6th Cir. 2018), *cert. denied sub nom. Stojetz v. Shoop*, 138 S.Ct. 1262 (2019) (quoting *Van Tran v. Colson*, 764 F.3d 594, 604 (6th Cir. 2014)). Also, "a state court's decision involves an 'unreasonable application' of federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case.'" *Id.* (quoting *Henley v. Bell*, 487 F.3d 379, 384 (6th Cir. 2007)). "'Clearly established federal law' includes only the holdings of the Supreme Court, excluding any dicta; and an application of these holdings is 'unreasonable' only if the petitioner shows that the state court's ruling 'was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.'" *Id.* (quoting *White v. Woodall*, 572 U.S. 415, 427 (2014)).

The second circumstance in which habeas corpus relief may be granted is when the state's adjudication of a petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Further, absent a showing by clear and convincing evidence otherwise by a petitioner, determinations of fact "made by a State court shall be presumed to be correct." *Id.* § 2254(e)(1). To obtain relief under § 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court

decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011 (quoting 28 U.S.C. § 2254(d)(2)).

## IV.    ANALYSIS

The Petitioner's second amended petition asserts five grounds for relief: (1) ineffective assistance of counsel; (2) the State's withholding of material evidence constituted a violation of *Brady v. Maryland;* (3) the State knowingly proffered false testimony; (4) the Petitioner's confession was involuntary and should have been suppressed; and (5) that the Petitioner's sentence of life imprisonment constituted cruel and unusual punishment. Docket No. 51, p. 6-11.

Under 28 U.S.C. § 2254, a federal court may grant habeas relief to a state prisoner only if the petitioner satisfies several procedural requirements. First, a habeas corpus petitioner is eligible for relief under § 2254 only if he has first exhausted all available state court remedies. *See* 28 U.S.C. § 2254; *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015). Accordingly, to satisfy the "exhaustion requirement," a petitioner must fairly present his claim "to the state courts under the same theory in which it is later presented in federal court." *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (citing *Pillette v. Foltz*, 824 F. 2d 494, 497 (6th Cir. 1987). If a petitioner fails to present claims of error to the state appellate courts, those claims are procedurally defaulted and cannot be considered by federal courts absent an excuse. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim has not procedurally defaulted, habeas corpus relief will only be granted to a state prisoner under one of two circumstances: (1) the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) the state's

adjudication of a petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### A. Petitioner's Ineffective Assistance of Counsel Claims Do Not Warrant Relief Because the Claims Are Either Procedurally Defaulted or Fail on the Merits

#### 1. Exhaustion

Petitioner asserts that he received ineffective assistance of trial counsel, and contends that, had counsel performed competently, there is a reasonable probability that at least one juror would have voted not guilty. Docket No. 51, p. 9. The Petitioner presented three specific instances of ineffective assistance to the Tennessee Court of Criminal Appeals: (1) trial counsel failed to meet with him a sufficient number of times; (2) trial counsel failed to file any written motions before trial; and (3) trial counsel failed to hire an expert witness. However, the Tennessee Court of Criminal Appeals found that the expert witness claim was waived for failure to comply with state appellate procedures. *Swader*, 2009 Tenn. Crim. App. LEXIS 854, at *10. As a result, that claim is procedurally defaulted and may not be reviewed on the merits unless Petitioner can demonstrate cause and prejudice to excuse the default. Because only the first two ineffective assistance claims were properly raised in state court, any other allegations of ineffective assistance are procedurally defaulted and cannot be considered on the merits. *See Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971) (holding that the petitioner must fairly present his claim "to the state courts under the same theory in which it is later presented in federal court."). The Petitioner has conceded that these claims are procedurally defaulted because they were not properly raised in state court. Docket No. 141, p. 20; Docket No. 141, p. 27. Absent a showing of cause excusing the default, these procedurally defaulted claims cannot be reviewed on the merits. *Pinholster*, 563 U.S. at 181.

## 2.       Excusing the Default

Although Petitioner contends that his procedural default is excused under *Martinez v. Ryan*, he has failed to make a sufficient showing of cause to overcome the default of the unraised ineffective assistance of trial counsel claims. 566 U.S. 1, 132 S. Ct. 1309 (2012); Docket No. 141, p. 20. In *Martinez v. Ryan*, the Supreme Court recognized a narrow exception to overcome default and held that ineffective assistance of post-conviction counsel can establish "cause" to excuse the procedural default of an ineffective assistance of trial counsel claim. *Id*. at 17.

The Supreme Court later clarified in *Trevino v. Thaler* that *Martinez* applies when a state's procedural framework "makes it highly unlikely . . . that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal. 569 U.S. 413, 429, 133 S. Ct. 1911, 1921 (2013). Following *Trevino*, the Sixth Circuit confirmed that the *Martinez* exception applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 795 (6th Cir. 2014). Accordingly, the Sixth Circuit has promulgated the following framework to evaluate claims under *Martinez*:

> As to these claims, the district court should determine . . .: (1) whether state post-conviction counsel was ineffective; and (2) whether [Petitioner's] claims of ineffective assistance of counsel were "substantial" within the meaning of *Martinez*, *Sutton*, and *Trevino*. Questions (1) and (2) determine whether there is cause. The next question is (3) whether [Petitioner] can demonstrate prejudice. Finally, the last step is: (4) if the district court concludes that [Petitioner] establishes cause and prejudice as to any of his claims, the district court should evaluate such claims on the merits.

*Atkins v. Holloway*, 792 F.3d 654, 660 (6th Cir. 2015) (internal citations omitted). Regarding the second question, the Petitioner must demonstrate that the underlying claim of ineffective assistance was a substantial one. *Id*. A substantial claim is those in which the claim has some merit or some factual support. *Landrum v. Anderson*, 813 F.3d 330, 335 (6th Cir. 2016).

However, in *Shinn v. Ramirez*, the Supreme Court narrowed this exception, holding that

federal habeas courts may not consider new evidence outside the state court record to establish cause under *Martinez*. 596 U.S. 366, 371, 142 S. Ct. 1718, 1728 (2022). As a result, "a prisoner is 'at fault' even when state post-conviction counsel is negligent," unless the Petitioner can satisfy one of the narrow exceptions in U.S.C. §2254(e)(2). *Id*. at 384. Ultimately, absent "constitutionally ineffective assistance", a petitioner generally bears the risk of post-conviction attorney errors. *Id*. at 382-83.

Further, in *Hugueley v. Mays*, the Sixth Circuit clarified that the *Martinez* exception was not designed to address situations where post-conviction counsel failed to fully develop a claim. 964 F.3d 489, 499 (6th Cir. 2020). Rather, the exception was meant to address cases where counsel failed to raise the ineffective assistance of trial counsel claim altogether. *Id*. Therefore, under the *Martinez-Atkins* framework, post-conviction counsel's failure to fully develop a claim, as long as it was properly raised and presented in good faith, cannot establish cause for a procedural default.

Accordingly, as outlined in *Strickland v. Washington*, a defendant must prove: (1) counsel's performance was so deficient that it failed to meet the Sixth Amendment's guarantee of counsel, and (2) the deficiency prejudiced the defense to the extent that it deprived the defendant of a fair trial. 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

As to the performance inquiry, the focus is on whether counsel's actions were reasonable under the circumstances. *Id*. at 688. At a minimum, counsel must either conduct a reasonable investigation or make a reasonable decision that makes certain investigation unnecessary. *Id*. at 692. However, there is a strong presumption that counsel's conduct falls within the range of reasonable behavior. *Id*. at 689. Regarding the prejudice inquiry, the defendant must demonstrate a reasonable likelihood that, but for counsel's errors, the outcome of the case would have been different. *Id*. at 694. A reasonable probability must be a probability significant enough to

undermine confidence in the verdict. *Id*.

In this case, Petitioner acknowledges that some of his claims are procedurally defaulted. Docket No. 141, p. 20; Docket No. 141, p. 27. For the reasons discussed below, Petitioner has failed to demonstrate sufficient cause to excuse the procedural default of these claims, except for three instances of ineffective assistance of counsel actually raised in state post-conviction proceedings.

### a.    The Voluntariness of Petitioner's Confession

The Petitioner first argues that trial counsel was ineffective for failing to effectively challenge the voluntariness of either his *Miranda* waiver or his subsequent custodial statement. Docket No. 51, p. 6 As an initial matter, Petitioner has not provided any substantive explanation of how his state post-conviction counsel was ineffective in a way that prevented him from raising this specific claim before the Tennessee Criminal Court of Appeals. Instead, he offers only conclusory allegations that post-conviction counsel was ineffective simply because they did not raise this claim altogether. Docket No. 141, p. 29. However, as Petitioner acknowledges, "post-conviction counsel elicited testimony from Mr. Swader and his trial counsel" on this issue but ultimately chose not to present further evidence or formally raise the claim for review. Docket No. 141, p. 29. Given the strong presumption that counsel's decisions fall within the wide range of reasonable professional judgment, the Petitioner has not demonstrated that post-conviction counsel's performance was deficient under *Strickland's* performance inquiry. *Strickland*, 466 U.S. at 689. Thus, Petitioner has failed to meet his burden as to *Atkins's* first prong of whether Petitioner's state post-conviction counsel was ineffective. *Atkins*, 792 F.3d at 660.

Further, Petitioner has failed to demonstrate that his underlying claim for ineffective assistance of trial counsel was a substantial one. As aforementioned, a substantial claim is one

wherein it has some merit or has some factual support. *Landrum*, 813 F.3d at 335. First, Petitioner asserts that trial counsel was ineffective in this instance because he failed to file a written pretrial motion. Docket No. 141, p. 21. However, this assertion lacks merit because the record reflects "defense counsel [made] an oral motion for the trial court to suppress the appellant's statement," which the trial court then considered on the merits. *Swader*, 2006 Tenn. Crim. App. LEXIS 109, at *21. Counsel's decision to proceed orally was made to avoid delaying trial and, as a result, reflects a strategic judgment rather than a deficiency in performance. Docket No. 1-4, p. 4. Trial counsel still acted competently by raising the suppression issue in a manner that allowed the court to consider it on the merits, thereby avoiding any prejudice to the Petitioner. *Swader*, 2006 Tenn. Crim. App. LEXIS 109, at *21.

Second, Petitioner asserts that trial counsel was ineffective when litigating the oral motion and, as a result, failed to make a record. Docket No. 141, p. 21. Petitioner contends that counsel's failure to present key factors deprived the court of evidence demonstrating that he did not knowingly, intelligently, or voluntarily waive his *Miranda* rights. Docket No. 141, p. 24. Specifically, Petitioner asserts that trial counsel should have highlighted the following: (1) Petitioner was 16 years old at the time of the interrogation; (2) he was enrolled in special education classes, had various learning disabilities, and trial counsel failed to investigate evidence of potential intellectual impairments; (3) no evidence was introduced regarding any prior interactions with the criminal justice system that would have given him the knowledge to request an attorney; and (4) he repeatedly asked to see his mother. Docket No. 141, p. 24-27.

In determining whether a juvenile voluntarily relinquished his *Miranda* rights, the Supreme Court has provided an array of factors to ensure that any waiver was the product of a free and deliberate choice in compliance with *Schneckloth v. Bustamonte*. 412 U.S. 218, 225, 93 S. Ct.

2041, 2047 (1973). Under the totality of the circumstances, a court must examine the "juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 2572 (1979). Additionally, a court may look to the presence or absence of a parent or guardian. *Id*. at 730.

In this case, the considerations raised by the Petitioner would not have altered the outcome of the motion to suppress. Although the Petitioner was sixteen years old at the time of the statement, the other considerations raised by the Petitioner do not equate to a finding that he was incompetent or unable to voluntarily waive his *Miranda* rights. First, the fact that the Petitioner was enrolled in special education classes and suffered from dyslexia and panic attacks are non-dispositive. As stated by the Sixth Circuit, "our sister circuits have found several instances where defendants, despite their mental retardation or low I.Q. were found to have waived their rights knowingly and intelligently." *Clark v. Mitchell*, 425 F.3d 270, 284 (6th Cir. 2005). The Tennessee Court of Criminal Appeals determined that the Petitioner had the capacity to understand the consequences of the waiver. He was not under the influence of drugs or alcohol, he conceded that he received his *Miranda* warnings, he read aloud the first line of his statement, he signed the waiver form, and he had previously been adjudicated delinquent for multiple offenses. *Swader*, 2006 Tenn. Crim. App. LEXIS 109, at *25-27. While his mother was not present, the absence of Petitioner's mother is non-dispositive because his history of drug use, disorderly conduct, curfew violations, driving without a license, and assault demonstrate an independence of mind and behavior, undermining any claim that his request to see his mother was akin to a request for counsel. *Ashurst v. Morris*, No. 89-3502, 1990 U.S. App. LEXIS 16054, at *10 (6th Cir. Sep. 11,

1990) (holding that a juvenile's request to call his mother did not invoke the right to counsel where his actions showed independence of mind and behavior, including drug use, late-night carousing, and holding a job). Conversely, the record demonstrates "the [Petitioner] possessed normal intelligence" and "had the capacity to understand the consequences of waiving his *Miranda* rights. *Id*. at \*27. Therefore, even if the Petitioner's trial counsel's performance was deficient, the Petitioner cannot satisfy *Strickland's* prejudice inquiry, as the arguments would not have altered the outcome. *Carter*, 910 F.3d at 841 (holding that an ineffective assistance claim is meritless when alternative arguments proffered by the defendant would not have changed the outcome).

Consequently, Petitioner's claim is without merit and fails to satisfy the first two prongs of the *Atkins* framework, preventing him from establishing cause to excuse his procedural default.

### b. Juvenile Transfer to Adult Court

Petitioner further alleges that trial counsel was ineffective in failing to contest the Petitioner's transfer to adult court. Docket No. 141, p. 15.[2] He contends that had counsel thoroughly investigated his family background, education, juvenile record, mental health status, and other mitigating factors, he could have been prepared to oppose the transfer. Docket No. 141, p. 15. Instead, according to Petitioner, counsel agreed to the transfer without securing any benefit for him. Docket No. 141, p. 15.

Although Petitioner invokes *Martinez*, the Sixth Circuit has held that the *Martinez* exception does not apply to claims of ineffective counsel during juvenile transfer proceedings. *Atkins*, 792 F.3d at 663. In *Atkins v. Holloway*, the defendant, who was sixteen at the time of the offense, 7 to adult court after a juvenile transfer hearing. *Id*. at 655-56. The defendant raised three

---

[2] Petitioner concedes that the *Martinez* exception fails to excuse his default under the Sixth Circuit's *Atkins's* framework but maintains that he remains eligible for the exception, contending that *Atkins* was wrongly decided in his view. Docket No. 141, p. 20.

claims of ineffective assistance of counsel regarding the juvenile transfer proceedings in his federal habeas petition. *Id*. at 656. The United States Court of Appeals for the Sixth Circuit held that the *Martinez* exception does not extend to claims of ineffective counsel in juvenile transfer proceedings. *Id*. at 663. The Court reasoned that *Martinez* applies only to ineffective assistance of trial counsel claims because the Supreme Court has not recognized the same constitutional protections for juvenile transfer proceedings. *Id*. Unlike trial counsel, whose role is to test the prosecution's case, juvenile transfer counsel primarily engages in discretionary and procedural advocacy, making the two proceedings fundamentally different. *Id*.

Therefore, absent another excuse, the Petitioner cannot establish cause for his procedural default under the *Martinez*-Atkins framework.

### c.      Trial Counsel Failed to Hire an Expert Witness

Petitioner further asserts that trial counsel was ineffective for failing to retain expert witnesses for trial. Docket No. 51, p. 8. Specifically, he argues that counsel should have retained experts "to perform independent ballistics testing, to inform the jury about safety features on the weapon, to independently compare latent prints from the gun to [the Petitioner], and to inform the jury that none of the identifiable prints on the gun belonged to [him]." Docket No. 51, p. 8. As previously mentioned, while the Petitioner raised this claim in state court, the Tennessee Court of Criminal Appeals dismissed the claim for failure to comply with state appellate procedures. *Swader*, 2009 Tenn. Crim. App. LEXIS 854, at *10. Unlike Petitioner's other ineffective assistance claims, he does not raise the *Martinez* exception. Therefore, absent an excuse, the claim is procedurally defaulted.

Even if this court considers the claim, it does not merit relief as Petitioner has failed to demonstrate that trial counsel performed deficiently. As emphasized by the Sixth Circuit,

"[s]trategic decisions, including whether to hire an expert, are entitled to a strong presumption of reasonableness." *Hale v. Cool*, 122 F.4th 637, 646 (6th Cir. 2024). When questioned about his decision, trial counsel testified that an expert was not necessary under the circumstances. Docket No. 1-4, p. 5-6. Counsel explained that Petitioner's defense rested on the argument that he did not intentionally kill the victim. *Swader*, 2009 Tenn. Crim. App. LEXIS 854, at *5. Hence, because Petitioner did not dispute the cause of death or the identification of the weapon, trial counsel reasonably determined that expert testimony on fingerprints, independent ballistics testing, or medical evidence was immaterial. Docket No. 1-4, p. 5-6.

While Petitioner also proffers that testimony to inform the jury about safety features on the weapon would have been beneficial, counsel's decision not to pursue an expert on this issue must be assessed at the time of the decision. *Strickland*, 466 U.S. at 690. Trial counsel testified that he did not anticipate the State's expert asserting that accidental discharge was impossible. Docket No. 1-4, p. 6. Given the high deference afforded to strategic decisions, Petitioner has not shown that counsel's performance was deficient or that he suffered prejudice as a result. *Strickland*, 466 U.S. at 689. Accordingly, the Court of Criminal Appeals did not unreasonably apply clearly established law.

### d.    Remaining Claims

Petitioner raises seven additional ineffective assistance of counsel claims, alleging that trial counsel: (1) failed to investigate and present evidence that Petitioner's intoxication negated the specific intent required for robbery, a key element of the felony murder and attempted especially aggravated murder charges; (2) failed to investigate the facts, mitigating evidence, and circumstances surrounding the crime in preparation for the transfer hearing, trial, and sentencing; (3) failed to present available evidence that latent fingerprints found on the gun did not match

Petitioner; (4) failed to introduce evidence that Jennifer Blackwell, the only witness placing Petitioner at the scene, did not identify him in a photo array; (5) failed to interview Blackwell, investigate the reliability of her recollection, or present impeachment evidence; (6) failed to investigate how law enforcement obtained the alleged murder weapon and challenge the State's evidence linking it to Petitioner; and (7) failed to present evidence contesting the State's request for consecutive sentencing. Docket No. 51, p. 6-9.

These claims were not raised in state court and therefore procedurally defaulted. Petitioner has not provided an argument to establish cause for the default or to demonstrate actual prejudice. He did not invoke the *Martinez* exception for these specific allegations by asserting that post-conviction counsel was ineffective for failing to raise them. Furthermore, Petitioner has not provided supporting facts in his supplemental brief or second amended petition to substantiate the merits of these claims. Therefore, absent an excuse, Petitioner has not met the necessary requirements to overcome the procedural default of these claims.

### 3.    Merits

### a.    Trial Counsel Failed to Prepare the Petitioner to Testify

Petitioner contends that trial counsel was ineffective in failing to spend sufficient time preparing him to testify at trial. Docket No. 51, p. 8. As previously noted, habeas relief is warranted only if the state court unreasonably applied federal law or made an unreasonable factual determination. *Pinholster*, 563 U.S. at 181. In rejecting this claim, the Tennessee Court of Criminal Appeals found that Petitioner failed to show how additional meetings with counsel would have changed the trial's outcome. *Swader* v. State, No. M2008-01021-CCA-R3-PC, 2009 Tenn. Crim. App. LEXIS 854, at *8 (Crim. App. Oct. 7, 2009). For the following reasons, this determination was neither an unreasonable application of federal law nor based on an unreasonable

factual finding.

At the outset, the state appellate court correctly applied *Strickland* in evaluating trial counsel's performance. *Id*. As noted above *Strickland's* framework calls for both a performance and prejudice inquiry. Here, Petitioner alleges that trial counsel was deficient because "counsel spent less than an hour preparing his young client to testify." Docket No. 141, p. 31. However, the record reflects that trial counsel rebutted this claim. Specifically, trial counsel testified that he visited Petitioner in jail at least twice, reviewed discovery with him, met with him before court appearances, and conducted an "extensive session" on how to testify. *Swader*, 2009 Tenn. Crim. App. LEXIS 854, at *3-4; Docket No. 1-4, p. 7.

The Sixth Circuit has emphasized that "no absolute rule can be enunciated as to the minimum amount of time required for adequate preparation of a criminal case. . .." *United States v. Knight*, 443 F.2d 174, 177 (6th Cir. 1971). To demonstrate deficiency, Petitioner must show that counsel's preparation fell outside the bounds of prevailing professional norms. *Richardson v. Palmer,* 941 F.3d 838, 856 (6th Cir. 2019). Yet, Petitioner does not specify what additional time or preparation was necessary or how counsel could have better prepared him to testify.

Consequently, even assuming trial counsel's performance was deficient in the amount of time spent with the Petitioner, he fails to show actual prejudice. In other words, Petitioner cannot demonstrate that had counsel performed competently, the outcome of the trial be different. *Strickland*, 466 U.S. at 691. As explained by the Court of Criminal Appeals, Petitioner failed to demonstrate how more frequent meetings would have produced a different outcome at trial. *Swader*, 2009 Tenn. Crim. App. LEXIS 854, at *8. At his post-conviction hearing, when asked what additional advice he needed or what information he didn't get to present to the jury, Petitioner conceded he could not think of anything. Docket No. 1-4, p. 34. He further admitted that everything

he wanted the jury to know had been presented. Docket No. 1-4, p. 34. Thus, at a minimum, Petitioner fails to establish prejudice under *Strickland*, and the Court of Criminal Appeals did not unreasonably reject his ineffective assistance of counsel claim.

### b. Trial Counsel Failed to File Written Motions

Petitioner's second exhausted claim alleges that trial counsel was ineffective for failing to file any written motions. Docket No. 51, p. 7. At the Petitioner's post-conviction hearing, trial counsel testified he deliberately chose not to file written motions as part of his negotiation strategy. *Swader*, 2009 Tenn. Crim. App. LEXIS 854, at *9. In particular, in exchange for not seeking a continuance to file motions, the district attorney general agreed to withdraw its notice of enhancement factors. *Id* at *3 Nevertheless, the State still permitted Petitioner's counsel to make an oral motion to suppress his statement. *Id*. Petitioner further argues that he was prejudiced because of the fact that counsel "neglected to file a motion to have [the Petitioner] adjudicated as a juvenile, a motion to dismiss the indictment, a motion for change of venue, and a motion to suppress [the Petitioner's] statement." Docket No. 51, p. 7.

However, under *Strickland*, informed strategic decisions made by counsel, based on a reasonable investigation of the facts, are "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. "To establish ineffective assistance when trial counsel fails to file a motion to suppress, the petitioner must demonstrate that "the meritorious nature of the motion [was] so plain that 'no competent attorney would think a motion to suppress would have failed.'" *Hill v. Black*, No. 23-3929, 2024 U.S. App. LEXIS 13132, at *6-7 (6th Cir. May 30, 2024) (quoting *Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018)). The petitioner must also demonstrate that counsel had no reasonable strategic basis for failing to file the motion. *Id*.

Here, trial counsel's decision not to file written motions was a strategic one. As an initial

matter, Petitioner has not provided any basis as to how the motions cited in his habeas petition would have any merit. Conversely, trial counsel assessed the circumstances and determined that the benefits of the agreement with the State outweighed the consequences. Trial counsel explained that because "[his] oral motion and the full hearing that [they] had in chambers before trial covered [his concerns] adequately," then the advantage of preventing the prosecution from pursuing life without parole was worth it. Docket No. 1-4, p. 4. Therefore, the Petitioner has failed to rebut that counsel acted unreasonably and has failed to proffer any argument as to how the motions he raises would have been plainly meritorious.

Accordingly, Petitioner has not shown that counsel's performance was deficient or that he suffered actual prejudice. Without more, he fails to establish that the state court unreasonably applied clearly established law.

**B.    Petitioner's Brady Violation Claim for Withholding Evidence Is Procedurally Defaulted, and He Fails to Establish a Brady Violation**

### 1.    Exhaustion

Petitioner alleges that the State withheld evidence prior to trial. Docket No. 51, p. 9. Specifically, he argues that state authorities failed to inform trial counsel that Jennifer Blackwell did not identify him in a photo array, withheld evidence that fingerprints on the murder weapon did not match him, and failed to disclose that he was intoxicated during the offense and when giving his statement. Docket No. 51, p. 9. He contends that, had this information been disclosed, there is a reasonable probability that at least one juror would have acquitted him. Docket No. 51, p. 9. However, these claims were never raised in state court and are therefore procedurally defaulted, as Petitioner failed to exhaust his state remedies before presenting them in federal court.

### 2.    Excusing the Default

Petitioner's claims that the State withheld exculpatory evidence are procedurally defaulted

because they were not raised in state court. While *Brady v. Maryland* acknowledges that the suppression of exculpatory evidence may warrant *per se* relief, such default cannot be excused under *Brady* in this case. *Banks v. Dretke*, 540 U.S. 668, 691, 124 S. Ct. 1256, 1272 (2004).

Generally, a *Brady* violation can excuse procedural default only if the suppressed evidence was not discoverable through reasonable diligence by the defense. *Id.* As stated in *Brady v. Maryland*, "[s]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S. Ct. 1194, 1197 (1963). In *Strickler v. Greene*, the Supreme Court outlined three essential elements to establish a *Brady* violation: "(1) [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." 527 U.S. 263, 282, 119 S. Ct. 1936, 1948 (1999). A *Brady* violation occurs only if the suppressed evidence is "material," meaning "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985). A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*.

The "cause" and "actual prejudice" requirements to excuse procedural default in the habeas context parallel two of the three elements of a Brady claim. *Banks*, 540 U.S. at 691. With regard to the suppression element "a petitioner shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence." *Id*. As for the prejudicial element, it is met when the suppressed evidence is material under *Brady*. *Id*. A *Brady* violation therefore "implicitly constitutes a per se excuse ('cause' and 'prejudice') for

procedural default in habeas review." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006).

Here, Petitioner fails to establish a *Brady* violation that would excuse his default. Docket No. 51, p. 9. First, Petitioner argues that the State did not inform trial counsel that Ms. Blackwell had failed to identify the Petitioner's photograph from the array. Docket No. 51, p. 9. However, this evidence is neither favorable nor prejudicial, as the record reflects that Petitioner confessed to the shootings before trial. Hence, absent suppression of his confession, the failure to disclose this identity-related evidence had little probative value regarding his innocence. Similarly, Petitioner's claim that the State withheld evidence that fingerprints on the alleged murder weapon did not match him is without merit. Docket No. 51, p. 9. Given his pretrial confession, this evidence, even if disclosed, would not have created a reasonable probability of a different outcome. *Swader*, 2006 Tenn. Crim. App. LEXIS 109, at *7-8. Finally, Petitioner argues that the State authorities withheld evidence that the Petitioner was under the influence at the time of the offense and at the time of his confessional statement. Docket No. 51, p. 9. However, as Respondent counters, no *Brady* violation occurs where the defense knew or should have known of the exculpatory evidence, or "where the evidence was available from another source." *Hall v. Russell*, 339 F. App'x 576, 578 (6th Cir. 2009). While the record is unclear as to whether the Petitioner was actually intoxicated, it is unlikely that Petitioner was unaware that he was in any intoxicated state as it would have resulted from his own voluntary actions. Accordingly, Petitioner fails to establish a *Brady* violation, and his procedural default remains unexcused.

### C. Petitioner's Procedurally Defaulted Claim of False Testimony by Ms. Blackwell Fails to Demonstrate Cause to Excuse the Default

#### 1. Exhaustion

Petitioner further alleges that the State knowingly proffered false evidence in the testimony of Ms. Jennifer Blackwell, who testified that the Petitioner asked her for a cigarette. Docket No.

51, p. 10. However, Petitioner never raised this claim in state court, either on direct appeal or during post-conviction proceedings. Because he failed to fairly present this issue to the state courts, the claim is procedurally defaulted.

### 2. Excusing the Default

Because this claim is procedurally defaulted, Petitioner must demonstrate cause and actual prejudice to excuse the default. However, Petitioner has not provided any argument to excuse this default for cause and has thus failed to overcome procedural default. Likewise, he does not claim actual prejudice, nor could he. As an initial matter, Petitioner presents no evidence that Ms. Blackwell's testimony was false or that the State knew she was presenting false testimony at trial. As previously discussed, given his pretrial confession, even if the State knowingly proffered false testimony, there is no reasonable probability that the outcome would have been different. *Swader*, 2006 Tenn. Crim. App. LEXIS 109, at *7-8. Accordingly, Petitioner is not entitled to relief on this claim.

### D. The State Court Did Not Unreasonably Apply Clearly Established Law in Denying His Motion to Suppress His Confession

### 1. Exhaustion

The petitioner raised his claim that his confession was not voluntary and should have been suppressed. Docket No. 51, p. 10; *Swader*, 2006 Tenn. Crim. App. LEXIS 109, at *21. However, the Tennessee Court of Criminal Appeals rejected his claim and held that the trial court properly refused to suppress his statement. *Id*. Therefore, because the Court of Criminal Appeals properly disposed of the claim on the merits, it has been exhausted and can be considered by this Court on its merits.

### 2. Merits

The merits of this claim do not support granting Petitioner relief. In determining whether a

defendant voluntarily waived their Fifth Amendment rights, a court will examine the "juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 2572 (1979).

The Tennessee Court of Criminal Appeals, considering the totality of the circumstances, concluded that Petitioner understood his Miranda warnings and the consequences of waiving those rights. *Swader*, 2006 Tenn. Crim. App. LEXIS 109, at *25-28. The court relied on factors such as Petitioner's lack of intoxication, prior criminal experience, signed waiver form, and normal intelligence. *Id*. As discussed in the ineffective assistance of counsel claim, where Petitioner argued that trial counsel failed to raise additional factors, and absent any deviation from clearly established law, the Court of Criminal Appeals did not unreasonably apply the law or make an unreasonable factual determination. Therefore, Petitioner is not entitled to relief on this claim.

### E. While Petitioner's Miller Claim Was Exhausted, Miller Is Inapplicable to His Original Sentence of Life with The Possibility of Parole

#### 1. Exhaustion

Petitioner contends that his original sentence violates *Miller v. Alabama* because it constitutes a *de facto* life sentence without the possibility of parole. Docket No. 51, p. 11-12. On July 10, 2013, Petitioner moved to stay the instant habeas proceedings to exhaust his state remedies before seeking federal habeas review. Docket No. 64. Specifically, he sought to file a motion in state court to reopen his post-conviction proceedings and present this claim. Docket No. 64. The motion was granted, and the instant proceeding was administratively closed. Docket No. 67. After filing his motion in the Circuit Court for Rutherford County, the trial court denied his motion on the grounds that *Miller* was inapplicable to the Petitioner's original sentence of life with the

possibility of parole. Docket No. 81-1, p. 32. Petitioner then filed an application for permission to appeal the trial court's denial of his motion but was denied on the same grounds by the Tennessee Court of Criminal Appeals on September 24, 2013. Docket No. 81-3, p. 1. Petitioner filed an application for permission to appeal with the Tennessee Supreme Court but was ultimately denied on February 24, 2014. Docket No. 81-6; Swader, 2014 Tenn. LEXIS 170.

Because the Tennessee Court of Criminal Appeals disposed of the claim on its merits, it has been exhausted and can be considered by this Court on the merits.

### 2. Merits

The merits of this claim do not support granting Petitioner relief. Petitioner argues that his sentence of life with the possibility of parole after 51 years is functionally equivalent to life without parole because he will be 74 years old at his first opportunity for release. Docket No. 51, p. 11 He contends that this exceeds the average life expectancy of an African-American male, which is 70.6 years. Docket No. 51, p. 11. The trial court denied relief, finding *Miller* inapplicable because Petitioner was sentenced to life *with* the possibility of parole rather than life without the possibility of parole. Docket No. 81-1, p. 32. The Tennessee Court of Criminal Appeals affirmed. Docket No. 81-3, p. 2.

While Petitioner cited in state proceedings to other courts that have reasoned that *Miller* must also apply to sentences that do not provide a meaningful prospect of parole within the juvenile offender's lifetime, the Sixth Circuit has declined to adopt that position. Docket No. 81-4, p. 4. In *Starks v. Easterling*, the defendant argued that his parole eligibility at age 77 violated *Miller* because it exceeded the life expectancy of incarcerated African American males. 659 F. App'x 277, 278 (6th Cir. 2016). The state trial court denied relief and was affirmed by the court of criminal appeals. *Id*. at 279. On appeal of his federal habeas petition, the defendant argued that the

state trial court and federal district court erred on these grounds and, as a result, was an unreasonable application of clearly established law. *Id*. The United States Court of Appeals for the Sixth Circuit affirmed his conviction holding that the Tennessee courts' decision was not contrary to, or an unreasonable application of, clearly established law. *Id*. at 280-281. The court declined to extend *Miller*, reasoning that the Supreme Court has not explicitly held that the Eighth Amendment prohibits juvenile life sentences that functionally equate to life without parole. *Id*. Therefore, under binding precedent, *Miller* does not apply to Petitioner's sentence, so his claim is unsuccessful on the merits.

## V.     RECOMMENDATION

For the reasons discussed above, the undersigned recommends that habeas corpus relief be **DENIED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute waiver of further appeal of this Recommendation. *See Thomas v. Arn*. 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

32